CLARK COUNTY v. HAYMAN *et al., Appellants.*

Division Two, February 1, 1898.

1. **Pleading:** PETITION IN SUIT ON BOND. A petition in a suit by the county against the bondsmen of a defaulting treasurer, is held sufficient after verdict.

2. ———: ———: ORDER OF COUNTY COURT. It is not necessary, in a suit by a county against the bondsmen of a defaulting county treasurer, that the petition aver that an order was made by the county court upon the treasurer to turn over all balances to his successor. Such an order is not a condition precedent to the right of the county to sue. Nor is it necessary to draw a warrant on the treasurer for the balance due, after his term has expired.

3. **Defalcation of County Treasurer:** WHETHER DURING FIRST OR SECOND TERM. It is a question for the jury to find under proper instructions, whether the treasurer's defalcation, of which the county complains, occurred during his first or second term.

4. ———: EVIDENCE. When a county treasurer has charged himself with moneys payable into the treasury received by him, he and his sureties are bound thereby unless they can show disbursements on lawful warrants or such mistakes as will justify a correction in the accounts by a court of equity.

5. ———: ———: SETTLEMENT BY EXECUTORS. The settlement made by executors of a deceased county treasurer is *prima facie* evidence of the state of the treasurer's account with the county; and this is the case whether the treasurer died in office, or after the end of his term.

*Appeal from Clark Circuit Court.*—HON. OTHO S. CALLIHAN, Special Judge.

AFFIRMED.

*T. L. & S. J. Montgomery.* and *Berkheimer & Dawson* for appellants.

(1) The petition does not set forth any breaches of the bond, and does not set out any amount of money

coming into the hands of the treasurer; refers to no settlement had, nor does it state that the treasurer was ever ordered to turn over any part of the money sued for. No exhibits are filed with the petition, and defendants are not advised of what they are to meet, and the petition fails to state any cause of action against defendants. *State v. Thomas*, 17 Mo. 503. (2) The petition should state what money the treasurer received, the amount he has not accounted for, and in what respect he has failed to do his duty. Murphree on Off. Bonds, secs. 593, 540; *State ex rel. v. Sappington*, 67 Mo. 529. (3) The settlement of the executors did not bind either Penn or his securities, as he did not die while in office, and there was no authority for the executors to make said settlement at the time. R. S. 1889, sec. 3175; *Cole Co. v. Dallmeyer*, 101 Mo. 63. (4) This section creates a liability not known to the common law and should be strictly construed. Sutherland on Stat. Con. [1 Ed.], sec. 371, and cases cited. (5) The executors can not create a liability even against James R. Penn. *Crowley v. McCrary*, 45 Mo. App. 350; *Studebaker Bros. v. Montgomery*, 74 Mo. 101; *Church v. McElhinney*, 61 Mo. 540; *Richardson v. Palmer*, 24 Mo. App. 480. (6) The settlement, to be binding upon the principal and securities, must be made during his term of office. Murphree on Off. Bonds [1 Ed.], sec. 605; *Taylor v. Auditor*, 4 Ark. 574; *Grayham v. Co. Court*, 9 Dana, 192; *Rhodes v. Com. Wealth*, 6 B. Mon. 359. (7) Settlements made with the county court are not judgments but mere accounting between principal and agents. *State ex rel. v. Ewing*, 116 Mo. 136; *State to use v. Smith*, 65 Mo. 469; *Cole Co. v Dallmeyer*, 101 Mo. 63. (8) Settlements are not binding on the securities to which they are not parties. *Thomas v. Hubbell*, 15 N. Y. 405.

*John A. Whiteside* and *N. T. Cherry* for respondent.

(1) The allegations in the petition as to the breach of the bond are sufficient. 5 Am. and Eng. Ency. of Law, 357; .Green and Myers, Pl. and Pr., sec. 695; Chitty, Pl. [16 Ed.], pp. 345, 346; *Bricker v. Stone*, 47 Mo. App. 339. (2) The laws requiring warrants for official disbursements have no application to the duty of a retiring treasurer in turning over his charge to his successor. *State v. Pechstien*, 7 Mo. App. 339; R. S. 1889, sec. 3175; *Coe v. Nash*, 40 S. W. Rep. 235. (3) In the event of the death of the treasurer, at the expiration of his term of office, the statute expressly provides that the administrator or executor of the deceased treasurer shall make a settlement of his accounts with the county court, if the treasurer has not done so before his death. R. S. 1889, sec. 3175. (4) The settlement made by Penn's executors was *prima facie* evidence against his securities. *State ex rel. v. Ewing*, 116 Mo. 136. (5) When respondents proved the deficiencies in the funds sued on by treasurer Penn's accounts and settlements they had made out a *prima facie* case. *Mahon et al. v. Kinney Co.*, 28 S. W. Rep. 1024.

GANTT, P. J.—This action was instituted by Clark county in this State against Erbine E. Hayman and Robert McLachlan, executors of James R. Penn, deceased, late treasurer of said county, and the other defendants as his bondsmen on his official bond as treasurer of Clark county, to recover the penalty of said bond, to wit, $35,000, to be satisfied, however, by the payment of $145.51 belonging to the M. & M. Railroad Funding Bond fund, belonging to said county, $549.57, belonging to the contingent fund of said county, $511.19

belonging to the road district fund of said county, $362.08 belonging to the road damage fund of said county, and $195.22 belonging to the A. & N. C. R. R. fund of said county.   James R. Penn served two terms as treasurer of Clark county.   His first term of two years expired January 1, 1891, and he entered upon his second term, the term for which the bond above sued on was given, on January 1, 1891.   After the expiration of his second term, some time in May, 1893, he died testate and insolvent.

This action is based on balances alleged to be shown by the treasurer's accounts to be due the county on the several funds in his hands at the expiration of his term, December 31, 1892.

The answer contains three defenses: *first*, a general denial; *second*, that the defalcation occurred, if at all, during Penn's first term as treasurer for which the sureties on his second bond were not liable; *third*, that the county court had employed expert accountants to examine Penn's books and they reported that he owed the county $750 and that the court accepted that amount as the balance due and his executors had discharged that balance.

The reply denied that the defalcation occurred during the first term of Penn as treasurer; denied that the county court had accepted the finding of the experts as the balance due or that it had been paid.

I.    The petition is sufficient after verdict.   It avers the election of Mr. Penn as treasurer of Clark county at the general election in 1890; that on the eleventh day of November, 1890, he executed the bond sued on; that it was filed with the county clerk in his office, December 12, 1890, and was duly approved by the county court; that he took upon himself the duties of treasurer of said county on January 1, 1891, and

assumed to act and did act as treasurer of said county for the term of two years and until January 1, 1893, when his term having expired, he turned over the office to his successor; that a duly certified copy of his bond as treasurer was filed with the petition; that as such treasurer and during said term he received large sums of money belonging to the M. & M. Funding Bond fund, the contingent fund, the road district fund, the road damage fund, and the A. & N. R. R. fund, all belonging to said county of Clark. That he had broken the conditions of his bond as treasurer in that having received said money belonging to said several funds of the county he had neglected, failed and refused at the expiration of his term of office to pay over to his successor in office the money in his hands as treasurer belonging to said funds of said county, to wit, the several amounts hereinbefore specified belonging to each of said funds, and that his sureties and executors had likewise failed and refused to pay over the balances in his hands due said funds, or any part thereof.

The exact balances thus are alleged which he has failed to account for to his successor. It is not essential that the petition should aver an order by the county court upon the treasurer to turn over said balances to his successor. Such an order is not a condition precedent to the right of the county to sue. Section 3175, Revised Statutes 1889, requires that "at the end of his term, or if he resign or be removed from office, *he*, or if *he* die, his executor or administrator, shall make such settlement and deliver to his successor in office all things pertaining thereto, together with all money belonging to the county." The law requiring warrants for the disbursement of public moneys by the treasurer are inapplicable here. Mr. Penn was no longer treasurer. It is not a question of his refusal to pay moneys without a warrant. He is sued for the failure to turn

over to his successor the public moneys in his hands at
the expiration of his term on the thirty-first day of
December, 1892, which he had not paid out on proper
warrants.   This the statute required him to do and is
what his sureties undertook he should do, and if he
failed to turn over such balances to his successor in
office it was a breach of his bond without any further
order of the county court requiring him to do so.
There is no provision for the drawing of a warrant or
making an order for the balance by the county court.
The objection to the petition is not sustained.

II.   The court submitted to the jury the issue
whether the defalcation occurred during the first term
of Mr. Penn as treasurer and gave the sureties who were
defendants a pointed and liberal instruction exoner-
ating them if the jury found the shortage had occurred
during the first term.   There was ample evidence
showing that Mr. Penn fully accounted for all the funds
during his first term and the jury so found.   No error
can be predicated on the action of the court in that
respect.

III.   The instructions in the nature of demurrers
to the evidence were properly refused.   The statements
and settlements filed by Mr. Penn as treasurer were
unquestionably strong evidence against his executors
and sureties on his bond.   He was bound by his bond
to faithfully perform the duties which his sureties under-
took he should perform, among which was to keep a
faithful and just account of all moneys payable into the
county treasury which he received and keep an account
of the receipts and expenditures.   Having charged him-
self with the moneys thus received upon the books of
his office, it is the clearest and most satisfactory evidence
of his liability therefor and he and his sureties are only
to be discharged from a liability therefor by showing
disbursements on lawful warrants or such satisfactory

evidence of mistake in so doing as would justify a court of equity in correcting the account, and of this there is not the semblance of evidence in this record.

IV.   But again it is urged that the circuit court erred in admitting in evidence against the sureties the settlement made with the county court by the executors.   Several reasons occur to us why the admission of this settlement does not constitute reversible error. In the *first* place this settlement was shown by defendant's own witness, Mr. Ball, to be absolutely correct, and that it exhibited the exact amount due from Mr. Penn at the expiration of his office.   *Secondly*, independently of the settlement the books of the treasurer showed these balances were due to the several funds. *Thirdly*, the statute defining the duties of the treasurer and for the performance of which his sureties stood sponsors, required him at the expiration of his term of office to make a settlement and turn over the balances to his successor, and if he should die his executor or administrator should make such settlement and turn over the amount due to his successor.   To hold that the bond did not continue the obligation until the performance by the treasurer and sureties of this last duty, would be a most unreasonable and forced construction of this otherwise most salutary law.   We see no hardship whatever in holding that, *prima facie*, the settlement made by the executors of Mr. Penn showed the state of his account with the county treasury.

The contention of counsel for appellant is that the administrator or executor only has the right to make a settlement for his deceased principal *when the treasurer dies in office*.   But this is not the reading of the statute nor its obvious meaning.   The treasurer is not required to make this "turn over" settlement until the expiration of his term, or after his removal.   His sureties are required to make his settlement after his death,

not simply when he dies during the term, but at any time when his settlement is due and he has a balance in his hands which by law he should turn over. This settlement thus made in obedience to the statute was within the obligation of the bond. The law imposing the duties of the treasurer was as much a part of the bond as if written out in full.

V.   As to the Menz & Harrington report to the county court made in pursuance of an agreement with the county court, it had none of the elements of a settlement which the statute required of the treasurer or his executors and the court committed no error in permitting the counsel for the county to show it was incorrect and in refusing to instruct as prayed by defendants in their instruction number 11.

Finding no error, the judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.